The Council is on the matter. Please approach the podium and identify yourselves for the record and the party that you represent. My name is Robert Shearer. I represent Derek Coe and Kimberly Wilson, the appellants. Rosa Tumialan, and I'm for U.S. Bank. Before we proceed, we've got to point out a procedure. Yesterday, after 4 o'clock, this court received the appellant's reply brief. I don't know if the appellees received a copy of that reply brief. We received a copy after hours, Your Honor. We do object to its filing at this late date. And unfortunately, it's been the pattern in this appeal where everything's been filed extremely late. But the U.S. Bank was prejudiced in drafting its response brief, given the nature of the issues involved. And now the reply brief, we don't have an opportunity to address those points, except here in oral argument, on less than 12 hours. All right. This is what we're going to do. Your objection is noted for the record. We're going to allow the reply brief to be filed, and we'll give you seven days to file a written response to the reply brief. And then if you want to, you have some extra time to incorporate a verbal response today in the arguments with regards to the reply brief. Thank you, Your Honor. All right. So court will proceed to 15 minutes. Time for rebuttal? A few minutes, Judge. Okay. All right. Thank you. All right. May it please the Court? Judge, I think it's safe to assume from Justice's – I'm sorry. It's safe to assume from the appellee's brief that they basically conceded that in opposition to appellant's motion to vacate in the trial proceedings below, based on grace period notice, they basically filed nothing in response. Well, let me ask you a question about the grace period provision. When was that adopted by the legislature? I believe it was in – I'm not sure. I think 2005, but I'm not sure about that date. All right. And why did they adopt it? Well, I think it's pointed out in the – very clearly in the Ida Iga opinion as to why they did it. And when the legislature created the provision, did they include a repeal date in its original – They did originally. I believe it was – had a repeal date of three years before this present appeal. But it was in effect when the Ida Iga opinion was written. And so it extended to July 1, 2016, correct? Correct. All right. And did the legislature provide any savings provision in that? No, there's no savings provision. All right. So I think – I mean, this is very simple. I think if the rights created in 15-1502.5 of the Illinois Mortgage Foreclosure Law is a vested right, then the July 1st – Why is it a vested right? Well, I think it's a vested right for several reasons. Number one, 15-1502.5H indicates that these rights cannot be waived. Secondly, in the Ida Iga opinion, the justice – presenting justice talked in terms of unfairness, violation of due process, and justice otherwise not done. These are all due process concepts. I did say – So you have a case counsel that says that this is a vested right? No, there's no case. This has not been decided. In fact, that goes to whether or not I'm supposedly liable for sanctions. There's no case. I know that's why I'm asking. There's no case here. All right. But is the law that if a legislature files an act, they have the right to amend it, they have the right to have it repealed? They absolutely do. The question is, is that repeal retroactive? Do you think this is a remedial legislation? No, I do not. You do not? I don't think it's procedural either. I think when – Do you think it's a substantive right? Yes. A property right? Yes, I do. It's related to mortgages, which relate directly to property rights. To the most provision here, it really doesn't pertain to a governmental entity. It pertains to mortgage proposal plaintiff. Correct. So how does that affect at all your argument with regards to this being a vested right? Well, I think, you know, that these were – when this section was written, and as it's interpreted by Adeyega, due process considerations were built into it. Also, it provides a certain remedy for the mortgageors, which takes place prior to a lending company being able to file the mortgage foreclosure suit. I think all of these concepts go to due process, which the legislature cannot repeal retroactively. Well, they didn't repeal this retroactively. They were very clear that this act, this provision, had an end date. Right. Right. So from the very beginning, it was clear that this particular provision wasn't going to last to the end of time. It was a provision that was going to exist for a period of time. I understand that. But the question is, when a pending case – when a case is pending, whether or not that repeal has retroactive effect to cut out the case so that the court has to leave it where it is when the repeal comes in. Here, I think it's a substantive right so that it cannot cut out a case that's proceeding when the repeal is – becomes effective. All right. Continue. Pardon me? Please continue. Well, as I said, if it's a non-vested remedial or procedural right, then the July 1st, 2016 repeal is retroactive and we stop now. But as I indicated, I believe it's a vested right. Then we get to the question of have we provided this court with a sufficient record? In the lower court, there was no testimony taken by Judge Seneschal. There were no counter-affidavits filed by the bank. And there was no other documentary evidence entered by the bank. And I think under those circumstances, a report of proceedings is not necessary for this court to make a decision, especially given the general rule that when counter-affidavits are not filed, the assertions in the first affidavits are considered admitted. When did this litigation start? I'm not even certain about that. I didn't have it when it started. Okay. It's April of 2012 when the plaintiff filed the complaint. Okay. Now, our position is basically this is a vested right that wasn't cut off by the July 1st, 2016 repeal. But we provided the court with a sufficient record. As to the, just very briefly, as to the sanctions request, I mean, it's this area whether or not it's a vested right is very gray. There's no prior decisions as to whether or not the repeal was retroactive, whether or not the rights set forth in Section 15-1502.5 are vested or remedial. And so, therefore, I think that there are no grounds for worth 375 sanctions. What about the argument that you were aware that this act was repealed, that you still proceeded to file this action in the appellate court, knowing that the act itself was no longer in effect, based on the long line of cases that this court has filed from the Supreme Court, indicating that if there are no saving clauses once an act is terminated, it's terminated. And there was no language indicating that it was going back or that it was going forward. It indicated clearly that the end date was going to be July 1st. Well, I understand that. But if it's a vested right, then there's a reasonable argument that can be made that the appeal, these proceedings should continue. And under those circumstances, I don't think there's any grounds for the imposition of sanctions. All right. Let me have another question. Why on the 11th hour did you file your reply brief in this manner? Well, Judge, as you probably, I don't know if you remember, but I take a lot of mortgage foreclosure cases, a lot of which are pro bono. I just have to take a lot to generate sufficient fees to keep my practice going. And I just don't have a lot of time. I don't have any help. I even have to contract out for- But you didn't ask this court for an extension of time. Pardon me? You didn't ask us for an extension of time from when you briefed us. No, I realize that, and I apologize for that. But I just wanted to get something in. And I wanted it written so that they would know exactly what my argument would be today so that they wouldn't be ambushed by it. Of course they're ambushed, counsel. They did it 5 o'clock yesterday for a 10 o'clock argument this morning. Judge, they anticipated the vested right argument in the Warren appellee's brief. I mean, you know, we're talking about a reply brief that's eight or nine pages long. I know. I stayed here last night after I got it at 5 o'clock. No, I apologize for that. And to read the cases that are cited in it. That's why I asked you if there was any case that says this is a vested right. I apologize for any inconvenience to the court or to my opposing counsel. I just wanted to get something in so that they knew what the arguments would be today. All right. Anything further? No, Judge. Thank you. All right. Thank you. May it please the Court. Again, Rosa Tumey-Allen for U.S. Bank. There's one thing I will agree with my opposing counsel on, and that this is a very simple, straightforward appeal. This positive question is whether that amendment of the grace period notice requirement impacted a vested right. There's really no need to consider this. The discussion was this is a retroactive application. That concept needs to really be fleshed out a little bit more. And, of course, we didn't have we had to do exactly what counsel said. We had to anticipate what the arguments would be because the repeal, which was on record and everyone knew about it for over a year, was not discussed in the opening brief as we expected that it should have been. Well, how do you reconcile this matter with the Adiago case where they're relying on it saying that it's a vested right here? Well, Adiago doesn't even hold that. All it says is it explains the nature and origin of the grace period notice requirement, which was enacted in 2009. That was in response to your question, Judge, which was three years after the mortgage in this case was executed. So the idea that somehow an after-imposed stopgap measure, which was introduced in 2009, and everyone knows in 2009 the financial crisis was still going on. And this was, in fact, Adiago itself says that the purpose of the Homeowners Protection Act was written to provide homeowners of single-family owner-occupied properties an additional last-minute escape valve to rescue their mortgages before the lender files a suit under the foreclosure law. Sounds remedial, doesn't it? I'm sorry? It sounds pretty remedial. It's very remedial, Judge, and it's also very temporary. From the minute it was enacted, the legislature did not intend this to be something that was going to be incorporated forever. And yes, it was extended twice, and that's very significant because the legislature knew that there was still a need for this escape valve, this safety measure for homeowners in distress. That's what this was, an additional protective remedial provision for homeowners in distress so that they could attempt to avoid the consequences of a default. Well, that need existed in this case. It existed. And the grace period statute applied. At the time that the order was written here, yes, Judge. Okay. But what happened... Right. So now we're supposed to ignore that there might have been a violation of that grace period? Well, ignore is probably not the right word. I think that's exactly what we would have to do. What the court is asked to do is apply the general rule when it comes to how amendments are treated, which is to treat the case according to laws that exist at the time that it's being reviewed. Because there was no savings provision, because this was an unconditional repeal of the statute, there was no question about retroactive applicability or impact because there was no vested right. It's only vested rights which are protected. What are vested rights? Well, the Supreme Court tells us what a vested right is, and it has to be something that is an expectation that is so far perfected it cannot be taken away by legislation. Well, that's not this, because even the legislature knew that when it enacted it, it put in a provision that is going to expire at a certain point. It's repealed as of X date. Now, that date was extended twice, presumably because the legislature viewed that there was still a need for that protection. But at some point, that protection, the need for it ceased to exist. But it didn't cease to exist when this mortgage was foreclosed on or defaulted. Correct? No, that's right. The original complaint was filed in April 2012. And this defendant, and also I want to make clear also for the record, the argument here is being advanced on behalf of both defendants. Only Carr was the mortgagor. Only Carr was entitled to a grace period notice if, in fact, he was entitled to a grace period notice, which is an open question, and I'll get to that in a second. But Wilson, the other defendant, she is not on the mortgage. She is not a party to the note or the mortgage. A grace period notice to her was not necessary and never applied to her. Now, with respect to the applicability of the grace period notice and its compliance here, we don't know why this argument was denied not once, not twice, but three times by the trial court. Counsel attempts to excuse the ambiguities created in the record by saying that, well, there was no evidence taken and, you know, that's the problem, though. We don't know. His argument assumes that this unsigned declaration, which was later corrected with a signed declaration, that that was sufficient under Rule 91B to create an issue of fact as to whether or not the notice was received. But that's not even the question. The question is was it sent. There was argument had at the July 25 hearing and then again at the November 22 hearing and then again at the motion to reconsider, which was later on in March of 2016. Presumably, all of these issues relating to the applicability of the statute because, you know, let's see. At C-55 of the record, there was a return of service when the original complaint or when the complaint was originally served. It was personally served on Coe in Tennessee. So there's a potential argument there that maybe the grace period notice didn't apply to him because he didn't reside at the property here in Illinois, which is a requirement under the section of the GPN section that it has to be a principal resident. Well, we know that Coe was working in Tennessee, and he alleges later in an unsigned declaration, which is later corrected to be a signed declaration, that he took a job in 2013 and moved to Tennessee. But we don't know other than there was an argument at the trial court that the trial court heard and denied it three times. Without that transcript, there's an ambiguity in the record. And that ambiguity requires this Court to draw all those ambiguities in favor of U.S. Bank because the presumption must be that the trial court, having heard this argument three times, and it's not a different argument. It's the exact same one. It's being recycled from a motion to dismiss and to a motion to quash and to a motion to reconsider, and then finally as the motion goes up. What was the basis for the gradient of the motion to quash? Well, what we know on the motion to quash, which was combined with the motion to dismiss based on the grace period notice, that the trial court made a specific, or the order that's drafted by counsel, makes a specific finding that it was not untimely to raise it because there was that 60-day argument, and then also that there was sufficient notice to support a publication, a service-wide publication. So we know, that's all we know about the specific findings that the trial court made. What we don't know is, because the order denied the motions in their entirety, which included the grace period argument, but we don't know the basis for that. Without that transcript, we don't know if the Court heard and rejected the argument that, well, the grace period notice doesn't apply, or the grace period notice, you know, whatever happened with the grace period notice. We don't know. But we have to, the Court, what this Court does with the cold record as it receives from the trial court and the burden is on the party appealing to provide a meaningful record capable of meaningful review, is that you must draw the inference that the trial court made the proper ruling, based on the evidence presented before it, the argument presented before it, and that that ruling was consistent. Now, the fact that that argument was raised and rejected three times supports the inference that it was proper, the ruling was proper. But even if the Court were to reach the merits and find somehow that a grace period notice, which is a remedial temporary provision that does not impact a vested right, but it's nothing more than there's an expected continuance of the law as it exists, which I would submit is not a reasonable expectation, given the fact that the statute itself contains an end date. But even if we were to get to the merits, this case, Judge, your question was how is this case different from my day ego. Well, it's extremely different from my day ego, because in that case, you had defendants who were active in their raising of the issue. They answered the complaint. They filed motions for summary judgment based on the grace period notice. And the issue was raised well before. And then the Court's ruling is really driven by what does the grace period statute mean, what does it encompass, and what's its role in the foreclosure law altogether. And the argument that was raised in my day ego, and I would note also that my opposing counsel was the attorney that represented the boroughs in my day ego, so that's his case. One of the main arguments that was raised in that case by the banks was that as long as the complaint conforms to all of the requirements of the statute, that it's inferred that the grace period notice was sent and complied with, and that an admission, a failure to deny the allegation that all notices were sent and received, was sufficient for that. Well, the Court rejected that. And it actually makes sense when you look at what the reasoning was. The reasoning was the mortgage foreclosure statute predates the grace period notice by about 16 years or so. So they couldn't have been, the legislature could not have, could not be reasonably read to mean that compliance with a 16-year-old statute means that you were complying with something that was interposed later. There had to be something else. And then the Court remanded the case for consideration of whether or not there was evidence or an issue of fact as to whether or not the grace period notice was issued. Now, you compare that to where we are here procedurally. We have a complaint that served personally in October of 2012, several months after the complaint is filed. And then there's a series of motions, none of which involve the grace period notice. It's all about improper service because the guy lives in Tennessee or doesn't live in Tennessee, lives in Illinois. So there's problems, there's issues raised with that. It's not until, and then later on the bank voluntarily agrees to quash, consents to quash, and then reserves him. But due to efforts of invading service, publication service is needed. And that's documented throughout the record, the evasion and the consistent avoidance of the foreclosure case. Then it's not until May 2015 that for the first time we hear about the grace period notice alleged violation. And even then it's just raising the motion to dismiss and quash because they're also challenging the publication notice. Then after that, that argument is rejected. We don't know why. That's in the July order. And then it's raised again in a motion to dismiss, and that's rejected. And then leave to file an answer is granted and extended, not once but twice. And then it's not filed. And then motion for leave to file an answer in Affirmative Defense's instanter is filed on November 25 of 2015. And then that motion is denied. And then judgment of foreclosure is entered that day on a default. And then, again, it's raised in March 2016 and then rejected again and then again raised in the order as opposing the order approving sale. This was not a case where the borrowers were diligent in pursuing their relief. This was not an instance, represented by counsel the entire time, that they were in any way prevented from protecting their property interest in the mortgage. And it's actually just Coe that has the property interest here. He is the mortgage owner and he is the borrower. But he was never at all prevented. There is no equitable deficiency here. And, in fact, that's one of the standards that we know from Berry, because what Berry teaches is that this grace period notice defect, if it falls into the catchall, it must be something more than a defense to the complaint. So, arguably, if the GPN survived, for purposes of this case, survived the repeal, then to carry the day on a 15-1508B sub 4 catchall, it must do something more than say, well, you weren't supposed to file the complaint. There must be some equitable deficiency. And we don't have that here. We have no evidence that the defendant was in any way precluded from asserting his arguments and that there was any fraud by the bank to prevent him from asserting his property interest. Well, I'd ask counsel, I'm sorry. Go ahead. I'd ask counsel that when it was started. And the reason I want to know is because the theft started in April 2012, right? Yes, Judge. That's when the complaint was filed. The unapproved sale was entered in June of 2016. I'm sorry? It was entered in June of 2016, correct? Yes. All right. So there were four years of time within which, if there was any opportunity well, ample opportunity to protect interest in the property that was available, and it was simply not, it was simply not followed or pursued.  Sorry to interrupt. Sure. I would assume that you would expect the court to not go to the merits of the issues if we found that the rights, the statute has been repealed and there's no longer an issue. That's correct, Judge. That's why it's our opening argument because it is dispositive. If the court finds there was no vested right, there would be no need to address the merits. One last thing. Go ahead. I'm sorry. And I don't know if you would like to address your argument for sanctions in this case. Sure, Judge. We are happy to stand on our briefs on that. The only comment I would make is that the manner in which this appeal was briefed is, I think Judge Lampkin's comments are appropriate. We were ambushed. Yes, we anticipated a vested rights argument. But I don't think that's the issue on the sanctions. Because the issue was who was raised in your appellee's brief. Right. And so you had no ambush aspect to it there. So can you just, you're standing on your brief? Yes, we're standing on our brief. The manner in which this appeal was pursued, we believe, violates the spirit of Rule 375. The final point I would make is I wanted to address counsel's comments. I think one of our members of the panel asked how is this a vested right. Two points were raised. One was because 15-1502.5 sub H says it can't be waived. Well, we know from case law that it can be forfeited. If the grace period notice is raised for the first time in opposition to a sale, it's forfeited, unless it's accompanied by an equitable deficiency. So the fact that it can't be waived doesn't make it a vested right. Second is the due process consideration. Well, counsel conflates the concept of what due process means for purposes of protecting a mortgage and then what a remedial, temporary remedial provision provides. So there is due process here concerns certainly. But there was due process was complied with because what due process requires is two things. Notice, opportunity to be heard. Ample notice was given. Ample opportunity to be heard was provided. Now, did they take advantage of that to the fullest capacity? Maybe, maybe not. But the point is that this is not a situation where they have an unfettered right to a grace period notice at all times, regardless of when the statute ended on its own terms. For those reasons, Judge, we would ask that the judgment of the trial court be affirmed. Thank you. Mr. Barlow. Counsel just said they do the requirements for procedural due process notice and ample opportunity to be heard. Such a due process requires a fair hearing. Counsel also said that all the bank had to show was that they sent the notices. The other legal opinion indicates that if the mortgager states in a certification that they did not receive the notice, that it implies a contention that the bank had not sent it. With that, I think that's all I have. And thank you for your time. Thank you. All right. Thank you. All right. As indicated before, we'll allow the employees seven days to file a response to the reply that we received late yesterday. So that you can file that with the clerk, present it to the clerk on or before November 7th. Appreciate it. And we'll take this matter under advisement. I want to thank counsels. The clerk's going to take a short recess while we reconfigure the panel. Well, we're staying here. Oh. We don't need a recess. All right. Okay. Well, I'm just going to step off. We will reconfigure. Yeah. All right. We're going to reconfigure the panel. All right. All right. Thanks.